FILED
Apr 06, 2026
10:02 AM(CT)
TENNESSEE COURT OF
WORKERS' COMPENSATION
CLAIMS



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT MEMPHIS

| | |
|---|---|
| **LOTFI MTIRI,**<br>　　　**Employee**,<br><br>**v.**<br>**ENCOMPASS HEALTH**<br>**REHABILITATION HOSPITAL**<br>**OF MEMPHIS,**<br>　　　**Employer.** | **Docket No. 2025-80-5154**<br><br><br>**State File No. 6569-2025**<br><br><br>**Judge Shaterra R. Marion** |

## EXPEDITED HEARING ORDER

The Court held an expedited hearing on March 19, 2026. Mr. Mtiri sought medical and temporary disability benefits for his work injury. Encompass contended that Mr. Mtiri did not give proper notice and did not prove his work caused his injuries. For the reasons below the Court holds that Mr. Mtiri is likely to prevail at a hearing on the merits in showing he gave proper notice and his work accident caused his injuries.

## Claim History

On December 26, 2024, Mr. Mtiri fell while climbing down a ladder at work. He clarified, when asked repeatedly during his credible testimony through an Arabic interpreter, that he "fell" from the last step of the ladder, but did not fall to the ground. He "fell" against a desk, banging his left hip.

Mr. Mtiri did not work the next two days, and he returned to work on December 29, but his supervisor did not work that day. He testified that he verbally informed his supervisor of his injury on December 30. He also stated he wore a belt to help support his back which his supervisor observed him using.

He continued to work until January 2, 2025. He had a fever and back pain and

1

asked to go to the hospital on January 6. Encompass sent him to a nurse on site where he tested positive for COVID 19. Encompass required him to test negative before he returned to work, and he tested negative the next day. During this time he did not know whether his back pain was from his injury or a COVID 19 symptom. However, his back pain became worse, and he again asked to go to the doctor. Mr. Mtiri received documents to see a doctor on January 29. He stated his supervisor delayed getting him the documents.

Ms. P.J. Burder, from Encompass, testified that to her knowledge Encompass directed Mr. Mtiri to seek treatment for COVID, and he did not disclose back problems separate from his COVID symptoms.

Encompass questioned Mr. Mtiri about other possible dates of notice. The first report of injury lists that Encompass received notice on January 23. Mr. Mtiri remained consistent that he did not give notice on that date. On the petition for benefit determination, he lists January 29, 2025, as the date he gave notice. Mr. Mtiri stated he put that date because his supervisor gave him the documents to go to a doctor on that date. Mr. Mtiri also mentioned in his affidavit that he informed his supervisor on January 6. Mr. Mtiri stated that was the day he wanted to go to the hospital, and they sent him to the nurse for the COVID test.

Mr. Mtiri testified that he did not report the injury his first day back, December 29, 2024, because while other workers were probably in the building, no one worked in his department. Ms. Burder testified that someone from human resources works seven days a week where employees can report work injuries.

Mr. Mtiri went to a clinic and then chose Dr. John Lochemes from a panel. On April 14, 2025, Dr. Lochemes stated that Mr. Mtiri sought treatment for a back and knee injury after falling from a ladder at work. He noted the symptoms in Mr. Mtiri's back and knee are related to his work injury.

Dr. Lochemes ordered a left-knee MRI, which showed no significant meniscal tear. A lumbar MRI showed central canal stenosis, generalized disc bulging, and neural foraminal narrowing bilaterally. Dr. Lochemes ordered physical therapy, work conditioning that Mr. Mtiri did not receive, and an EMG that came back normal. He also recommended an injection, which Mr. Mtiri declined.

Dr. Lochemes referred Mr. Mtiri to spine surgeon Dr. Stephen Waggoner for his back injury. A lumbar x-ray showed no fracture and normal alignment. At a visit on July 10, Dr. Waggoner believed Mr. Mtiri to be at maximum medical

improvement. Encompass terminated Mr. Mtiri's temporary total disability payments on July 15. Encompass asked if he was paid $453.36 per week in disability benefits, and Mr. Mtiri responded, "around this."

Mr. Mtiri testified he had another appointment with Dr. Lochemes on July 23, and at that appointment Dr. Lochemes ordered a functional capacity exam for Mr. Mtiri that never took place. Mr. Mtiri testified that Dr. Lochemes needed the functional capacity exam before he could place Mr. Mtiri at maximum medical improvement.

Dr. Waggoner completed a medical questionnaire. He did not relate either Mr. Mtiri's back pain or leg pain to his work injury.

Dr. Lochemes offered his opinion on causation three times. Encompass sent him a causation letter that he signed on November 4, 2025, Dr. Lochemes did not relate Mr. Mtiri's back or left-leg pain to his work injury.

Mr. Mtiri sent a questionnaire, which Dr. Lochemes signed on December 17, with an amendment signed on February 17, 2026. Dr. Lochemes checked both yes and no for certain questions, and some responses are scribbled out. He wrote that he was waiting for a functional capacity exam in response to whether he took Mr. Mtiri completely off work, and in response to whether he recommended that Mr. Mtiri return to work with restrictions.

Encompass "attempted to clarify" Dr. Lochemes's position by sending another questionnaire that he signed on March 4. He stated he treated Mr. Mtiri for hip, back, and knee strain contusion and weakness. When asked if Mr. Mtiri's conditions were primarily caused by his work injury, Dr. Lochemes marked in between the "yes" and "no" boxes but wrote "we only treated & worked up work related symptoms." In response to whether Mr. Mtiri currently needs treatment, Dr. Lochemes marked "yes" and next to it wrote "FCE" (functional capacity exam). He then wrote "after that[,] MMI."

### Findings of Fact and Conclusions of Law

Mr. Mtiri must prove he is likely to prevail at a hearing on the merits for his request for benefits. Tenn. Code Ann. § 50-6-239(c)(6) (2025); *McCord v. Advantage Human Resourcing*, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Mar. 27, 2015).

3

*Notice*

In general, the injured worker must "immediately upon the occurrence of an injury or as soon thereafter as is practicable, give or cause to be given to the employer who has no actual notice, written notice of the injury . . . within fifteen (15) days after the occurrence of the accident[.]" Tenn. Code Ann. § 50-6-201(a)(1).

A Supreme Court Panel affirmed an Appeals Board opinion that laid out the framework for evaluating notice and summarized the steps as follows:

> [I]in cases involving the lack of timely written notice, the employee has the burden of proving that: (1) timely written notice was provided; (2) the employer had actual knowledge of the accident or injury; or (3) the employee has a reasonable excuse for the failure to provide timely written notice.

*Ernstes v. Printpack, Inc.,* No. W2023-00863-SC-R3-WC, 2024 Tenn. LEXIS 1, at *13-14 (Tenn. Workers' Comp. Panel Jan. 2, 2024).

On cross examination, Encompass repeatedly asked Mr. Mtiri about his injury and the sequence of events after his injury. Mr. Mtiri answered calmy and assuredly, and his recounting of the facts did not waver. *See Kelly v. Kelly*, 445 S.W.3d 685, 694-695 (Tenn. 2014) (discussing indicia of witness credibility).

Mr. Mtiri testified that after his injury on December 26, he did not work for two days, and then his supervisor didn't work when he returned to work on December 29. He then informed his supervisor of his injury on December 30, the next day they both worked. Mr. Mtiri also stated that he wore a belt to support his back, and his supervisor observed him doing so.

Mr. Mtiri further testified that the January 23, 2025, date on the first report of injury was not correct, and he put January 29 on his petition because on that day he received documents to go see a doctor. He additionally said his supervisor delayed getting those documents to him. He explained that he wrote January 6 in his affidavit because that is the day he wanted to go to the hospital. Although the record contains different dates, Mr. Mtiri was credible and gave reasonable explanations for why he listed those different dates.

Here, Mr. Mtiri did not give written notice within 15 days. However, the Court finds Encompass had actual knowledge of Mr. Mtiri's injury on December 30, 2025,

which satisfies the notice requirement.

*Causation*

To recover medical benefits, Mr. Mtiri must show a physician found to a reasonable degree of medical certainty that his work injury contributed more than 50% in causing his current need for medical treatment, considering all causes. *Id.* § 50-6-102(12).

The causation opinions in the record come from Drs. Lochemes and Waggoner. Dr. Lochemes referred Mr. Mtiri to Dr. Waggoner for his back injury, and Dr. Waggoner placed Mr. Mtiri at maximum medical improvement for his back, saying that Mr. Mtiri's current back problems are not related to his work injury. Dr. Waggoner also stated that Mr. Mtiri's left-leg problems are not related to his work injury, but Dr. Lochemes did not refer Mr. Mtiri to Dr. Waggoner for treatment of his left leg.

Dr. Lochemes, who holds a presumption of correctness as it relates to causation, gave three causation opinions. *Id.* § 50-6-102(E). His first two opinions contained contradictions and corrections, so Encompass attempted to clarify his position by asking for a third opinion. The Court finds the third opinion controlling.

In his third opinion, Dr. Lochemes stated he treated Mr. Mtiri for his hip, back, and knee, and that he only treated "work related symptoms." He also wrote that Mr. Mtiri still needs treatment, specifically a functional capacity exam, before he can place Mr. Mtiri at maximum medical improvement. Further, he stated in his medical records that Mr. Mtiri's condition is work-related.

The Court finds that Mr. Mtiri's back and knee injuries are work related and that he is not at maximum medical improvement for his knee.

Further, "Unless a court terminates an employee's entitlement to medical benefits or approves a settlement in which the parties reach a compromise on the issue of future medical benefits, an injured worker remains entitled to reasonable and necessary medical treatment causally-related to the work injury." *Limberakis v. Pro-Tech Sec., Inc.,* 2017 TN Wrk. Comp. App. Bd. LEXIS 53, at *7 (Sept. 12, 2017). Therefore, Mr. Mtiri is likely to show at trial that he is entitled to continued medical treatment for his injuries.

5

*Temporary Total Disability*

The Appeals Board stated: "An injured worker is eligible for temporary disability benefits if: (1) the worker became disabled from working due to a compensable injury; (2) there is a causal connection between the injury and the inability to work; and (3) the worker established the duration of the period of disability." *Jones v. Crencor Leasing and Sales*, 2015 TN Wrk. Comp. App. Bd. LEXIS 48, at *7 (Dec. 11, 2015).

Additionally, "[t]emporary total disability benefits are terminated either by the ability to return to work or attainment of maximum recovery." *Id.*

Here, Mr. Mtiri became disabled due to his work injury, a causal connection exists between his injury and his inability to work, and Mr. Mtiri credibly testified that Encompass stopped paying his temporary total disability benefits on July 15, 2025.

Dr. Lochemes, in his third causation opinion, stated that he has not placed Mr. Mtiri at maximum medical improvement. The Court therefore holds that Mr. Mtiri is likely to show at trial that he is entitled to temporary total disability benefits from July 16, 2025, to the present, at a rate of $453.36 per week.

**IT IS, THEREFORE, ORDERED** as follows:

1. Mr. Mtiri's request for additional medical treatment for his work-related injuries is granted.

2. Mr. Mtiri's request for temporary total disability benefits is granted. Encompass shall resume temporary disability payments at $453.36 per week and pay from July 16, 2025, to March 27, 2026, 36 weeks and 3 days, totaling $16,515.26.

3. The Court sets a status conference for **June 1, 2026, at 10:45 A.M. Central Time.** The parties must call (866) 943-0014 to participate. Encompass must arrange for a court-certified or registered Arabic interpreter. Tenn. Comp. R. & Regs. 0800-02-21-.13(3) (2026). Failure to call might result in a determination of the issues without the party's participation.

6

4. Unless interlocutory appeal of this Expedited Hearing Order is filed, compliance with this Order must occur by seven business days of entry of this Order as required by Tennessee Code Annotated section 50-6-239(d)(3).

**ENTERED April 6, 2026.**

_____
**JUDGE SHATERRA R. MARION**
**Court of Workers' Compensation Claims**

**APPENDIX**

**Exhibits:**
1. Medical Questionnaire signed by Dr. John Lochemes on December 17, 2025, with amendment signed February 17, 2026.
2. Notice of Denial
3. Causation Letter of Dr. Stephen Waggoner
4. Causation Letter signed by Dr. Lochemes on October 30, 2025
5. Medical Questionnaire signed by Dr. Lochemes on March 4, 2026
6. Medical Records filed by Employer
7. First Report of Injury
8. Employee Affidavits
9. *[For Identification Only]* Documents showing Mr. Mtiri was sent to a different doctor than the one he selected
10. COVID 19 Test of Mr. Mtiri dated January 6, 2025

## CERTIFICATE OF SERVICE

I certify that a copy of this order was sent as shown on April 6, 2026.

| Name | Mail | Email | Service sent to: |
|---|---|---|---|
| Lotfi Mtiri, Employee | X | X | 3918 Sabal Hill Drive Bartlett, TN 38135 lotfimtiri50@gmail.com |
| Rhoberta Orsland, John Barringer, Employer's Attorneys | | X | rorsland@manierherod.com jbarringer@manierherod.com |

**PENNY SHRUM, COURT CLERK**
**wc.courtclerk@tn.gov**

8



<u>Right to Appeal</u>:

If you disagree with the Court's Order, you may appeal to the Workers' Compensation Appeals Board. To do so, you must:

1. Complete the enclosed form entitled "Notice of Appeal" and file it with the Clerk of the Court of Workers' Compensation Claims before the expiration of the deadline.
   ➢ If the order being appealed is "expedited" (also called "interlocutory"), or if the order does not dispose of the case in its entirety, the notice of appeal *must* be filed *within seven (7) business days* of the date the order was filed.
   ➢ If the order being appealed is a "Compensation Order," or if it resolves all issues in the case, the notice of appeal *must* be filed *within thirty (30) calendar days* of the date the Compensation Order was filed.
   When filing the Notice of Appeal, you must serve a copy on the opposing party (or attorney, if represented).

2. You must pay, via check, money order, or credit card, a **$75.00 filing fee** *within ten calendar days* after filing the Notice of Appeal. Payments can be made in-person at any Bureau office or by U.S. mail, hand-delivery, or other delivery service. In the alternative, you may file an Affidavit of Indigency (form available on the Bureau's website or any Bureau office) seeking a waiver of the filing fee. You must file the fully-completed Affidavit of Indigency *within ten calendar days* of filing the Notice of Appeal. **Failure to timely pay the filing fee or file the Affidavit of Indigency will result in dismissal of your appeal.**

3. You are responsible for ensuring a complete record is presented on appeal. If no court reporter was present at the hearing, you may request from the Court Clerk the audio recording of the hearing for a $25.00 fee. If you choose to submit a transcript as part of your appeal, which the Appeals Board has emphasized is important for a meaningful review of the case, a licensed court reporter must prepare the transcript, and you must file it with the Court Clerk. The Court Clerk will prepare the record for submission to the Appeals Board, and you will receive notice once it has been submitted. For deadlines related to the filing of transcripts, statements of the evidence, and briefs on appeal, see the applicable rules on the Bureau's website at https://www.tn.gov/wcappealsboard. (Click the "Read Rules" button.)

4. After the Workers' Compensation Judge approves the record and the Court Clerk transmits it to the Appeals Board, a docketing notice will be sent to the parties.

   **If neither party timely files an appeal with the Appeals Board, the Court Order becomes enforceable. See Tenn. Code Ann. § 50-6-239(d)(3) (expedited/interlocutory orders) and Tenn. Code Ann. § 50-6-239(c)(7) (compensation orders).**

*For self-represented litigants: Help from an Ombudsman is available at 800-332-2667.*



## NOTICE OF APPEAL
Tennessee Bureau of Workers' Compensation
www.tn.gov/workforce/injuries-at-work/
wc.courtclerk@tn.gov | 1-800-332-2667

**Docket No.:** _____

**State File No.:** _____

**Date of Injury:** _____

_____

**Employee**

v.

_____

**Employer**

Notice is given that _____

*[List name(s) of all appealing party(ies).  Use separate sheet if necessary.]*

appeals the following order(s) of the Tennessee Court of Workers' Compensation Claims to the Workers' Compensation Appeals Board (check one or more applicable boxes and include the date file-stamped on the first page of the order(s) being appealed):

☐ Expedited Hearing Order filed on _____    ☐ Motion Order filed on _____

☐ Compensation Order filed on_____    ☐ Other Order filed on_____

issued by Judge _____.

### Statement of the Issues on Appeal
Provide a short and plain statement of the issues on appeal or basis for relief on appeal:

_____

_____

_____

_____

### Parties
**Appellant(s)** (Requesting Party): _____ ☐ Employer ☐ Employee

Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellant \**

Employee Name: _____ Docket No.: _____ Date of Inj.: _____

**Appellee(s)** (Opposing Party): _____ ☐ Employer ☐ Employee

Appellee's Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellee \**

## CERTIFICATE OF SERVICE

I, _____, certify that I have forwarded a true and exact copy of this Notice of Appeal by First Class mail, postage prepaid, or in any manner as described in Tennessee Compilation Rules & Regulations, Chapter 0800-02-21, to all parties and/or their attorneys in this case on this the _____ day of _____, 20 _____.

_____

*[Signature of appellant or attorney for appellant]*